KC **FILED**

AUG 0 1 2005

MICHAEL W. DOBBINS

CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

|  |  |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) Civil Action No. 05 C 4259 |
| v. | ) ) Judge Shadur |
| U.S. WIND FARMING, INC. et al. | ) ) Magistrate Judge Cole |
| Defendants. | ) ) ) |

## MOTION OF U.S. WIND FARMING, INC. FOR MODIFICATION OF ORDER FREEZING ASSETS

Defendant, U.S. Wind Farming, Inc. (the "Company"), by its attorney, Peter B. Shaeffer, respectfully requests that the Court modify the Order Freezing Assets entered on July 25, 2005, to permit the Company to utilize funds for the following corporate purposes:

        A.     For a period of three (3) months, the amount of $2,500 on a monthly basis to pay rent on the Company's offices at 15750 South Harlem Avenue Suite 27, Orland Park, IL 60462, for a total rental disbursement of $ 7,500;

        B.     For a period of three (3) months, the amount of $ 4,031.64 on a monthly basis to pay Mary Walsh for administrative services to the Company, for a total disbursement of $12,094.92 for administrative services;

C.    For a period of three (3) months, the amount of $100.00 per month on a monthly basis to pay for insurance ($50) and office supplies ($50), for a total disbursement of $300.00;

D.    An amount not to exceed $7,000 to Close Focus Research, 23229 Faisan Ct., Valencia, California 94355 (Tel:  800-513-4291), for ballistic testing of the durability of basalt fiber coated tiles;

E.    The amount of $4,960.11 to pay Peter B. Shaeffer, attorney for the Company, for billed and unpaid professional services ($4,890) and expenses (70.11) incurred in connection with representation of the Company in the SEC investigation during the period from July 1, 2005 to and including July 25, 2005;

F.    An amount not to exceed $7,500 to Peter B. Shaeffer, for professional services and expenses relating to the representation of the Company in this litigation; and

G.    The amount of $1,128.03 for payment of a check issued prior to the asset freeze in payment for employee services performed prior to the asset freeze.

In support of this Motion, U.S. Wind Farming would show as follows:

1.    This action was filed by the Securities and Exchange Commission on July 25, 2005.

2.    On July 25, 2005, the Court entered the Order Freezing Assets of U.S. Wind Farming, Inc. which is attached as Exhibit 1 ("Freeze Order").   With respect to financial assets, the Freeze Order funds as follows:

2

| **Location of Funds** | **Amount** |
| --- | --- |
| Republic Bank of Chicago<br>Account No. 0770000305 | $ 28,119.00 |
| Harris Bank<br>Account No. 7110007758 | 14.44 |
| LaSalle Bank<br>Client Funds Account of<br>Peter B. Shaeffer, Attorney | 11,844.27 |

Based on a LIFO accounting basis, the foregoing funds were received by the Company

from Ashlin Capital.

    3.    On July 25, 2005, the Court entered a Temporary Restraining Order and

Order for Emergency Relief which is attached as Exhibit 2 ("TRO").  Among other

things, the TRO required the Company to provide the Plaintiff within three days of the

issuance of the TR) with the following:

    a.    an accounting of all funds received from the sale
the Company's securities and the amounts remaining;

    b.    an accounting of the uses of the proceeds of sale;

    c.    a separate schedule of assets and liabilities;

    d.    the production of the documents underlying the accountings; and

    e.    all current accountant's reports, bank statements, documents
indicating title to real or personal property.

On July 28, 2005, the Company provided the SEC with:  (i) Schedule of Funds Received;

(ii)  Location of Funds - July 25, 2005; and (iii)  Statement of Assets and Liabilities as of

July 25, 2005.  The submission by the Company included reference to document

produced previously by the Company during the SEC investigation which preceded the

filing of this action. On July 28, 2005, the Company also advised Plaintiff that its banking records were available for inspection and copying at the Company's office.

4.     In addition, the TRO required the Company to respond to expedited discovery. On July 26, 2005, Plaintiff served the Company with: (i) Plaintiff's First Set of Expedited Interrogatories Propounded Upon Defendant U.S. Wind Farming, Inc. and (ii) Plaintiff Securities and Exchange Commission's First Request for Expedited Production of Documents Propounded Upon Defendant U.S. Wind Farming, Inc. The Company anticipates submitting the required responses by August 2, 2005.

5.     Since July 25, 2005, the Company's compliance with the requirements of the TRO has been substantially accomplished by Mary Walsh, the sole non-officer employee of the Company, Lori Anzine, the Company's sole officer and director, and the Company's attorney. In part, the Company seeks to modify the Freeze Order to permit the Company to compensate its sole employee and attorney for the services necessary to respond to the requirements imposed upon the Company by the TRO.

6.     The Company has a lease for office space with Inter Continental Development, 15750 South Harlem, Orland Park, Illinois 60462, for the Company's offices at 15750 South Harlem Avenue, Suite 27, Orland Park, IL 60462. This lease provides for monthly payments of $2,500, which payment includes utilities. Failure to make required lease payments will result in the Company having no office from which to conduct business.

7.     The Company employs Mary Walsh. Ms. Walsh is a full-time employee who is present at the Company's offices during regular business hours, and is responsible for the administration of the Company's business. The continued employment of Ms.

4

Walsh is essential to the Company's ability to comply with the known and anticipated obligations of the Company with respect to the instant litigation. Failure to maintain the employment of Mary Walsh will mean that the Company's business will not be administered on a daily basis and its ability to respond in this litigation will be sharply reduced.

8.      The Company anticipates a monthly expense of $50.00 for insurance and $50.00 for office supplies. These expenditures are necessary for the operation of the business of the company.

9.      Prior to the date of the filing of this action, the Company engaged the services of Close Focus Research, a nationally-recognized, ballistic testing service, to perform certain testing related to ballistic panels/shields which the Company contemplates developing as a possible source of revenue. Preliminary testing has been done, and the Company requires the expenditure of what it reasonably estimates to be not more than $7,000 to complete a more substantial level of testing. While the Company can offer no assurances as to the results of the additional testing, the failure to conduct the testing would severely, if not conclusively, halt the Company's exploration of a potential source of revenue. A copy of the web-site page for Close Focus Research is attached as Exhibit 3.

10.     Peter B. Shaeffer, the undersigned, was retained by U.S. Wind Farming, Inc. after the SEC suspended trading in the Company's stock on June 9, 2005. He was retained to represent the Company in connection with a formal investigation conducted by the SEC pursuant to Order of Private Investigation. The Company issued a retainer check of $25,000 against a billing rate of $300.00 per hour. Through June 30, 2005, the

fees for professional services ($12,510) and expenses advanced ($645.73) were applied against the retainer amount. Therefore, as of the date of the Freeze Order, the amount of $11,844.27 remained in the Client Funds Account of Peter B. Shaeffer at LaSalle Bank. Also, at the time of the asset freeze, there was an amount of $4,960.11 for unbilled professional services ($4,890) from July 1, 2005 to July 25, 2005, and unreimbursed expense advances ($70.11). The Company seeks relief from the asset freeze to apply a sufficient amount of the retainer balance in payment of these professional fees and expenses through and including July 25, 2005.

11.     The Company has requested that Peter Shaeffer continue his representation of the Company in connection with the instant civil action under the same terms. Substantial professional services have already been rendered by Peter Shaeffer in representing the Company in its responses to the requirements of the Freeze Order and the TRO. The Company seeks relief from the asset freeze to pay for the existing and continuing legal fees and related expense reimbursements for its representation in this matter. The amount of such payments is currently projected not to exceed $7,500. The Company would pay the ongoing legal expenses by application of its existing retainer balance.

12.     In the event that the Company is not able to pay the past or anticipated attorney's fees to Peter Shaeffer, it would not be represented in this action.

13.     At the time of the issuance of the Freeze Order, the Company had issued a check in the amount of $1,128.03 to an employee who had provided administrative services to the Company. This check had not been paid as of the date of the Freeze Order. As a result of the Freeze Order, the employee has been terminated. The Company

6

requests a modification of the Freeze Order to permit the payment of the check or, alternatively, the issuance of a new check.

14.     This Court has the equitable authority to modify its Freeze Order, and in at least one other SEC matter, this Court has provided a defendant relief from an asset freeze for a particular and limited purpose. *SEC v. Quinn*, 997 F2d 287, 289 (7th Cir. 1993) ("The district court indicated a willingness to release small amounts so that he could defend this suit, and on occasion the court did so.")

15.     In *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1106 (2d Cir. 1972), the Second Circuit established that in considering whether to unfreeze the assets frozen in a securities fraud proceeding, "the disadvantages and possible deleterious effect of a freeze must be weighed against the considerations indicating the need for such relief." Unless the Freeze Order is modified, the Company will be unable to maintain its office space, conduct the administration of its affairs, continue testing its existing potential revenue generating sources, or have representation in responding to the requirements of this litigation and the resolution of the proceeding against it.

16.     The consequences of not modifying the Freeze Order as requested, outweigh the "considerations indicating the need for such relief." The modification is for specific purposes, all providing a benefit or possible benefit to the shareholders of the Company. None of the requested relief is directed at conferring a disproportionate benefit to one shareholder over another. Furthermore, while the recognized purpose of the Freeze Order includes the maintenance of assets to meet a possible order of disgorgement, the reality is that the amount of financial assets available for "disgorgement" is likely to be well less than $100,000. The administrative costs of a

7

disgorgement plan where, as here, just the identification of the Company's shareholders will be a very difficult task, reasonably support the determination that the need for the relief to compensate shareholders, does not outweigh the consequences to shareholders if the Freeze Order is not modified.

WHEREFORE, U.S. Wind Farming, Inc. respectfully requests that the Court enter the attached, proposed Order Modifying Asset Freeze, or an Order of similar form and content.

Dated:  August 1, 2005.

Respectfully submitted,

_____
Peter B. Shaeffer, Attorney for
U.S. Wind Farming, Inc.

30 N. LaSalle Street
Suite 2140
Chicago, IL  60602
Tel:  312-782-5306

07/25/2005 17 57 FAX  312 353 7398       U S  S E C.                    011/013

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | |
| v. | : | |
| | : | **05C  4259** |
| U.S. WIND FARMING, INC., WILLIAM L. TELANDER, MAD WORLD CAPITAL GROUP, LLC, TEMPLAR FINANCIAL, LLC, TIME LIMIT CAPITAL, LLC, RAYMOND J. MCNAMEE, 20TH CENTURY JACKSON EQUITIES, INC., ANTHONY M. NECOECHEA, ASHLIN CAPITAL, LLC, KYOTO CAPITAL GROUP, LLC, CHARLES S. FLEMMING, ORONEX, LLC, and MICHAEL D. SPADACCINI, | : : : : : : : : : | JUDGE SHADUR  MAGISTRATE JUDGE COLE |
| | : | |
| Defendants. | : | |

## ORDER FREEZING ASSETS

This cause coming before the Court upon motion by the Plaintiff U.S. Securities and

Exchange Commission ("Commission") for an Order Freezing Assets of Defendant U.S. Wind

Farming, Inc. and Defendant William L. Telander. The Court has considered the Commission's

Complaint, Memorandum of Law in Support of it Emergency Motion for a Temporary

Restraining Order and Other Ancillary Relief, the Declaration of Jean M. Javorski and all other

documents and arguments in support of its application for emergency relief.

Being fully advised in the premises, the Court finds that the Commission has made a

sufficient and proper showing in support of the relief granted by presenting a *prima facie* case of

securities laws violations by the Defendants U.S. Wind Farming, Inc. and William L. Telander,

EXHIBIT

1

and showing a reasonable likelihood hat Defendants U.S. Wind Farming, Inc. and William L. Telander will harm the investing pub ic by continuing to violate certain provisions of the federal securities laws. The Court finds goo( cause to believe that, unless restrained and enjoined by Order of this Court, Defendants U.S. Wind Farming, Inc. and Williams L. Telander will dissipate, conceal or transfer from the jurisdiction of this Court assets which could be subject to an Order of Disgorgement. Accordingly, the Court hereby orders as follows:

I.

## IT IS HEREBY ORDERED ADJUDGED, AND DECREED THAT:

A.     all funds and other assets of Defendants U.S. Wind Farming, Inc. and William L. Telander are hereby frozen;

B.     accordingly, until the Court's adjudication of this case on its merits or otherwise ordered by the Court, Defendants U.S Wind Farming, Inc. and William L. Telander and their officers, agents, servants, employees, attorneys, depositories, banks, and those persons in active concert or participation with any one cr more of them, and each of them, who receive actual notice of this Order or of the terms of he asset freeze provisions contained herein, by personal service, mail, facsimile transmission o otherwise, are hereby restrained from, directly or indirectly:

(1).     transferring, sel ing, encumbering, receiving, changing, pledging, assigning, liquidating or otherwise disposing of, or withdrawing, any assets or property, including, but not limited to, cash, free credit balances, fully paid-for securities, and/or property pledged or hypothecated as collateral for loans, owned by, controlled by, or in the possession of U.S. Wind Farming, Inc. or William L. Telander, including any and all accounts at any financial institution in the name of

2

any one or more of them, and any and all accounts at any financial institution in which U.S. Wind Farming, Inc. or William L. Telander have signatory authority or a beneficial interest and

(2). transferring, selling, encumbering, receiving, changing, pledging, assigning, withdrawing, liquidating or otherwise disposing of, in any manner, any funds or assets, that constitute U.S. Wind Farming investor funds or any accounts or property into which U.S. Wind Farming investor funds were deposited or invested.

## II.

**IT IS HEREBY FURTHER ORDERED THAT,** any bank, financial or brokerage institution or other person or entity holding any such funds or other assets referred to in Section I of this Order, in the name of, for the benefit of, or under the control of U.S. Wind Farming, Inc. or William L. Telander, or any account holding U.S. Wind Farming, Inc. investor funds wherever located, and which receives actual notice of this Order or of the terms of the asset freeze provisions contained herein, by personal service, mail, facsimile transmission or otherwise, shall hold and retain within its control and prohibit the withdrawal, removal, transfer, disposition, pledge, encumbrance, assignment, set off. sale, liquidation, dissipation, concealment, or other disposal of any such finds or other assets.

SO ORDERED:

Dated: **July 2,** 2005

_____

**UNITED STATES DISTRICT COURT JUDGE**

3

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| UNITED STATES SECURITIES<br>AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : |
| v. | : |
| U.S. WIND FARMING, INC., WILLIAM L.<br>TELANDER, MAD WORLD CAPITAL<br>GROUP, LLC, TEMPLAR FINANCIAL, LLC,<br>TIME LIMIT CAPITAL, LLC, RAYMOND J.<br>MCNAMEE, 20TH CENTURY JACKSON<br>EQUITIES, INC., ANTHONY M. NECOECHEA,<br>ASHLIN CAPITAL, LLC, KYOTO CAPITAL<br>GROUP, LLC, CHARLES S. FLEMMING,<br>ORONEX, LLC, and MICHAEL D. SPADACCINI, | : |
| Defendants. | : |

CIVIL ACTION NO.

050 4259

JUDGE

**MAGISTRATE JUDGE COLE**

## TEMPORARY RESTRAINING ORDER AND ORDER FOR EMERGENCY RELIEF

This cause coming to be heard on the Securities and Exchange Commission's Emergency

Motion For a Temporary Restraining Order And Other Ancillary Relief ("Motion for TRO")

Against U.S. Wind Farming, Inc. ("Wind Farming"), William L. Telander ("Telander"), Mad

World Capital Group, LLC ("Mad World Capital"), Templar Financial, LLC ("Templar

Financial"), Time Limit Capital, LLC ("Time Limit Capital"), Raymond J. McNamee

("McNamee"), 20th Century Jackson Equities, Inc. ("20th Century Jackson"), Anthony M.

Necoechea ("Necoechea"), Ashlin Capital, LLC ("Ashlin Capital"), Kyoto Capital Group, LLC

("Kyoto Capital") and Charles S. Flemming ("Flemming") (collectively "the TRO Defendants"),

the Court having considered the Commission's Complaint, the Commission's Motion for TRO,

EXHIBIT
2

the Declaration of Jean M. Javorski, and all other documents and arguments in support of its application for emergency relief and having been fully advised in the premises, finds:

    (1)    That this Court has jurisdiction over the subject matter of this case and there is good cause to believe t will have jurisdiction over all parties hereto.

    (2)    That the Commission has made a sufficient and proper showing in support of the relief granted by prese iting a *prima facie* case of securities laws violations by the TRO Defendants as alleged in the Commission's Emergency Motion for a Temporary Restraining Order. There is good cause to believe that the Commission will ultimately succeed in establishing said violations. The Commission has made a sufficient and proper showing that there is a reasonable likelihood that the TRO Defendants will harm the investing public by continuing to violate the federal securities laws. The Court finds good cause to believe that, unless restrained and enjoined by Order of this Court, the TRO Defendants will continue to violate the federal securities laws and will dissipate, conceal or transfer from the jurisdiction of this Court assets which could be subject to an Order of Disgorgement Accordingly, the Court hereby orders as follows:

### I.

### TEMPORARY RESTRAINING ORDER

    IT IS HEREBY ORDERED t at that, pending determination of the Commission's request for a Preliminary Injunction, the TRO Defendants and their agents, servants, employees, attorneys, and those persons in active concert or participation with them, and each of them, are hereby restrained and enjoined from violating Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)] by, directly or indirectly, in the absence of any applicable exemption:

(a)     Unless a registration statement is in effect as to a security, making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise;

(b)     Unless a registration statement is in effect as to a security, carrying or causing to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale; or

(c)     Making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed with the Commission as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding of examination under Section 8 of the Securities Act [15 U.S.C. § 77h].

## II.

IT IS HEREBY FURTHER ORDERED that Wind Farming, Telander, their agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, and each of them are hereby restrained and enjoined from violating Section 17(a) of the Securities Act of 1933, [15 U.S.C. §§ 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

(a)     to employ any device, scheme, or artifice to defraud;

3

    (b)    to obtain money or property by means of any untrue statement of a material fact or

any omission of a material fact necessary in order to make the statements made, in

light of the circumstances under which they were made, not misleading; or

    (c)    to engage in any transaction, practice, or course of business which operates or

would operate as a fraud or deceit upon the purchaser.

### III.

**IT IS HEREBY FURTHER ORDERED** that Wind Farming, Telander, their agents,

servants, employees, attorneys, and those persons in active concert or participation with them

who receive actual notice of this Order, by personal service or otherwise, and each of them are

hereby restrained and enjoined from violating, directly or indirectly, Section 10(b) of the

Securities Exchange Act of 1934, [15 U.S.C. § 78j(b)], and Rule 10b-5 promulgated thereunder

[17 CFR § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the

mails, or of any facility of any national securities exchange, in connection with the purchase or

sale of any security:

    (a)    to employ any device, scheme, or artifice to defraud;

    (b)    to make any untrue statement of a material fact or to omit to state a material fact

necessary in order to make the statements made, in the light of the circumstances

under which they were made, not misleading; or

    (c)    to engage in any act, practice, or course of business which operates or      would

operate as a fraud or deceit upon any person.

### III.

**IT IS HEREBY FURTHER ORDERED** that the TRO Defendants, their agents,

servants, employees, attorneys, and those persons in active concert or participation with them

4

who receive actual notice of this Ord.r by personal service or otherwise, and each of them hereby

restrained and enjoined from, directl₃ or indirectly, participating in any offering of penny stock

(as that term is defined in Rule 3a51-i of the Exchange Act [17 C.F.R. § 240.3a51-1]), including

engaging in activities with a broker, cealer, or issuer for purposes of issuing, trading, or inducing

or attempting to induce the purchase .r sale of any penny stock, pursuant to Section 20(g) of the

Securities Act [15 U.S.C. § 77t(g)] ard Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

## IV.

## ACCOUNTINGS

**IT IS HEREBY FURTHER ORDERED** that the TRO Defendants shall:

(a)      provide the Commissic n, within three days of the issuance of this Order, with an

accounting of all of the funds receivec, directly or indirectly, from the sale of Wind Farming

securities, which accounting shall incl ide, without limitation, a schedule indicating (1) the date

of each sale and the name of each brol·erage account through which sales were made; (2) the uses

to which proceeds from such sales were put, including, but not limited to the nature and purpose

of the use of the proceeds, the date anc amount of the disbursement and the name of the

individual or entity involved in the trai saction; (3) amounts of any remaining proceeds and their

location; and (4) a separate schedule a) d accounting of the assets and liabilities of the TRO

Defendants and their location as of Jul·25, 2005;

(b)      produce to the Commis:ion, within three days of the issuance of the temporary

restraining order, all books, records and other documents supporting or underlying the accounting

provided to the Commission pursuant to paragraph IV.A. above; and

(c)      produce to the Commission, within three days of the issuance of this Order, all

current accountant's reports, bank state nents, documents indicating title to real or personal

5

property, and any other indicia of ownership or interest in property of the TRO Defendants,

which indicia of ownership or interest are now in the TRO Defendants' actual or constructive

possession.

## VI.

## RECORDS PRESERVATION

**IT IS HEREBY FURTHER ORDERED** that Wind Farming, Telander, Mad World

Capital Group, Templar Financial, Time Limit Capital, McNamee, 20th Century Jackson,

Necoechea, Ashlin Capital, Kyoto Capital, Flemming, Spadaccini and Oronex and their officers,

agents, servants, employees, attorneys. depositories, banks, and those persons in active concert or

participation with any one or more of them, and each of them, be and they hereby are restrained

and enjoined from, directly or indirectly, destroying, mutilating, concealing, altering, disposing

of, or otherwise rendering illegible in any manner, any of the books, records, documents,

correspondence, ledgers, accounts, statements, files and other property of or pertaining to U.S.

Wind Farming, Inc or any matters described in the Complaint filed by the United States

Securities and Exchange Commission in this action, wherever located, until further order of this

Court.

## VII.

## EXPEDITED DISCOVERY AND ANSWER

**IT IS HEREBY FURTHER ORDERED** that:

(1)     Immediately upon entry of this Order, the parties may take depositions upon oral

examination of parties and non-parties subject to two (2) business days notice. Should the

Defendants in this matter fail to appear for a properly noticed deposition, they may be prohibited

from introducing evidence at the hearing on the Commission's request for a preliminary injunction;

(2)     Immediately upon entry of this Order, the parties shall be entitled to serve interrogatories, requests for the production of documents and requests for admissions. The parties shall respond to such discovery requests within four (4) business days of service;

(3)     Should a party fail to respond to a request for admission within four (4) business days of service, that request may be deemed admitted for all purposes in this action;

(4)     Should a party fail to respond to an interrogatory within four (4) business days of service, that party may be prohibited from introducing any evidence concerning the subject of the interrogatory for any purpose in this action;

(5)     Should a party fail to produce a responsive document with four (4) business days of service, that party may be prohibited from introducing the withheld document for any purpose in this action;

(6)     All responses to the Commission's discovery requests shall be delivered to the Securities and Exchange Commission, Midwest Regional Office, Attention: Paul N. Mensheha, Esq., 175 W. Jackson Blvd., Suite 900, Chicago, Illinois 60604 by the most expeditious means available, including via facsimile to (312) 353 7398;

(7)     If any party to this action intends to present the testimony of any witness at the hearing on a preliminary injunction in this matter, that such party shall, at least three (3) business days prior to the scheduled date and time of hearing, serve on counsel for the other parties a statement of the name, address, telephone number of any such witness, and either a summary of the witness' expected testimony, or the witness' affidavit or declaration revealing the substance of such witness' expected testimony;

(8)   Service of discovery requests shall be sufficient if made upon the parties by facsimile or overnight courier; depositions may be taken by telephone or other remote electronic means; and

(9)   Defendants shall each serve an Answer or otherwise respond to the Commission's Complaint within five (5) calendar days from the date of this Order; the Court may deem the Commission's allegations admitted for purposes of the Commission's request for a preliminary injunction should a party fail to serve an Answer or otherwise respond within such time.

## VII.

**IT IS HEREBY FURTHER ORDERED** that nothing in the TRO shall be construed to require that Defendants abandon or waive any constitutional or other legal privilege which they may have available to him.

*This TRO shall expire at 3:15 pm Aug. 8, 2005*

**SO ORDERED:**

Dated: July **25**, 2005
*at 3:15 pm*

JUDGE: _____



Site Map

**CFR Home Page    Ballistic Services    Technical Info    Customer Login    Contact Us**

**Close Focus Research (CFR)
Ballistic Testing and Engineering Design Services**



Close Focus Research (CFR) is an American Engineering firm that specializes in the field of Ballistic Science. We have over 25 years of experience in the design, development, and testing of Ballistic Resistant type products.

**We offer the following services:**
- Small Arms Ballistic Testing
- Engineering Design for Ballistic Resistant Products

We act as both an independent ballistic testing service for qualifying your products and also as an Engineering Design service for those who desire assistance in the development of their products. We are not a product manufacturer and do not compete with our customers. We do however offer assistance to those who need to develop manufactured products. Our fully qualified staff of Engineering professionals are ready to offer you the best services and prices available.



**Small Arms Ballistic Testing Services**
- Handgun and Rifle calibers up to .50 caliber
- Testing to International Ballistic Standards
- Testing to a specific customer requirement
- Benchmark Testing Plans to refine your desi
- Detailed Ballistic Reports
- Photographs and video documentation if nec
- An optional password protected web site are
    where Customers can access their Ba Reports
    online via our Online Project Manage Service.
    Click here to view a Sample Online Account

**Engineering Design Services**
At Close Focus Research we not only offer t your products for you as an independent t service, but we also offer complete Design Ser

CFR's engineers can design almost any type of resistant product based on your requirements can assist you in the development of your prod

- Composite Materials
- Armor Systems
- Transparent Security Glazings
- Bullet Proof Windows
- Custom Ballistic Software

**Computer Data Destruction Service**
CFR offers a unique Computer Data Destr service for those who need to make sure computer data is completely destroyed and recoverable.

**Close Focus Research Personnel**



CFR's Engineers have backgrounds in Interior and Exterior Ballistics, Transparent Armor Design (bullet proof windows), both Resin and Metal Matrix Composite Materials Engineering, Material Science, Mechanical Engineering, Computer Science, and Photography.

## Confidentiality
CFR's Ballistic Services are kept strictly confidential. Customer's information including all designs and test results are never shared with other CFR customers or third parties without explicit permission.



## Contact Us
If you need support or have any questio comments, please contact our dedicated su group by either phone or email.

## Phone
To provide you with the best possible servic may contact us anytime.
Call us toll free at: 1-800-513-4291

## General Testing Prices / Request a Quotation
For general Ballistic Testing pricing, see our Ba Standards Testing Price List. For Benchmark T pricing, see our Benchmark Testing Plans. To a Price Quotation, use our online Request for form.



Copyright © 2003 by Close Focus Research
CloseFocusResearch.com